IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERAWAN FARMING, INC., | Case No. 1:10-cv-00148 LJO JLT |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO QUASH SUBPOENAS, OR IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER |
| vs. | |
| PRIMA BELLA PRODUCE, INC., | (Doc. 50) |
| Defendant. | |

Pending before the Court is Plaintiff Gerawan Farming, Inc.'s motion to quash two subpoenas served on non-party Gallina, Inc. by Defendant Prima Bella Produce, Inc., or for, in the alternative, a protective order. The parties have filed a joint statement regarding the discovery dispute in accordance with Local Rule 251. The parties have also appeared before the Court for hearing on this matter. Upon consideration of the parties' submitted papers, the parties' arguments at hearing, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** the pending motion.

**I.     BACKGROUND**

This is an action for trademark infringement, trademark dilution, trademark cancellation, and unfair competition. Plaintiff seeks to recover damages and injunctive relief for infringements on its "PRIMA" trademarks (United States Trademark Registration Nos. 1,441,378 and 3,592,505), which are used in the distribution of fresh produce. (Doc. 13.) Defendant contests Plaintiff's allegations and brings a counterclaim to cancel United States Trademark Registration Nos. 1,441,378, 3,592,505, and 1,585,993. (Doc. 21.)

1

On April 8, 2011, Defendant served a subpoena ("first subpoena") on non-party Gallina at its Rancho Cordova office.[1] (Doc. 69 at ¶ 2.) The first subpoena demanded that the following documents be produced by April 18, 2011:

> Gerwan Farming's audited financial statements; communications to lenders; and any working papers relating to or referring to branding, marketing, advertising, strategic planning, business loans and litigation from 1991 to the present.

(Id., Ex. A.)

On April 11, 2011, the first subpoena was received by Gallina's Roseville office, which is the location of Gallina's relationship partner for Plaintiff's account. (Id. at ¶ 2.) Two days later, Plaintiff served objections to the first subpoena on Defendant. (Id. at ¶ 4.) Also, on or around April 15, 2011, Gallina served objections to the first subpoena on Defendant. (Id. at ¶ 5.) Nevertheless, on April 25, Gallina received a second subpoena from Defendant. (Doc. 68 at 12.) The second subpoena requested the same documents as those requested by the first subpoena and demanded their production by April 26, 2011. (Doc. 69, Ex. D.)

Plaintiff filed the instant motion on April 18, 2011. (Doc. 50.) Therein, Plaintiff argues that the first subpoena is unduly burdensome, seeks disclosure of privileged or confidential material, and does not afford Gallina a reasonable time to respond. (Id. at 3-10.) On May 9, 2011, the parties submitted a joint statement regarding the discovery dispute in accordance with Local Rule 251. (Doc. 68.) In the joint statement, Plaintiff reiterates the arguments it makes in its April 18, 2011 motion and appears to expand its objections to include the second subpoena. (Id. at 15-24.) Defendant, on the other hand, maintains that the documents it seeks are relevant to its defense and counterclaim, and the documents are neither confidential nor privileged. (Id. at 24-36.)

On May 16, 2011, the parties appeared before the Court for hearing on this matter.

**II.   LEGAL STANDARDS**

Federal Rule of Civil Procedure 45 sets forth the obligations of the parties upon issuance of a subpoena. Pursuant to Rule 45(c)(1), a party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). To this end, the court must quash or modify a subpoena that "(i) fails to allow reasonable time to comply

---

[1] Gallina is Plaintiff's accountant. (See Doc. 50 at 3.)

2

. . . ; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A). In addition, the court may quash or modify a subpoena if it requires a person to disclose "a trade secret or other confidential research, development, or commercial information . . . ." Fed. R. Civ. P. 45(c)(3)(B).

Federal Rule of Civil Procedure 26 provides the scope and the limits of discovery. Pursuant to Rule 26(b)(1), "[p]arties may obtain discovery regarding any non-privileged matter that is relevant." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Nevertheless, the breadth of discovery is tempered by the court's power to issue, upon showing of good cause, "an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

### III. DISCUSSION

#### A. The First Subpoena

As indicated above, Plaintiff moves this Court to quash the first subpoena, or in the alternative, issue a protective order because it (1) poses an undue burden on Gallina as a non-party; (2) requests privileged and/or confidential materials; and (3) does not afford Gallina a reasonable time to respond. The Court evaluates each concern below.

**1. Undue Burden**

In determining whether a subpoena poses an undue burden, courts generally weigh the burden to the subpoenaed party against the value of the information to the serving party. Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005). This typically requires a court to consider "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by [the request], the particularity with which the documents are described and the burden imposed." Id. (quoting Travelers Indem. Co. v. Metropolitan Life Insur. Co., 228 F.R.D. 111, 113 (D. Conn. 2005)). The burden of persuasion falls on the party who moves to quash the subpoena pursuant to Rule 45(c)(3)(A). Moon, 232 F.R.D. at 637.

Defendant contends that the documents it seeks are pertinent to the issue of remedies and are relevant in determining whether Plaintiff's trademark is famous, whether the trademark is strong and

valuable, and whether the trademark has secondary meaning. (Doc. 68 at 26, 28-30.) In particular, Defendant maintains that Plaintiff's audited financial statements may provide insight on advertising expenses, brand value, and goodwill. (Id. at 26.) Defendant also argues that communications between Gallina and Plaintiff's lenders could provide information on the value of Plaintiff's intangible assets. (Id. at 28.) As to the time frame of the document request, Defendant asserts that Plaintiff itself made that the relevant period when it alleged in the amended complaint that its trademarks were in use "as early as the 1970s" and "became famous before 2002." (Id. at 26.) Lastly, Defendant contends that it must obtain all this information from Gallina because Plaintiff's discovery responses have so far been inadequate. (Id. at 31-34.)

Plaintiff counters that the first subpoena is "not only wildly overbroad, irrelevant, and unduly burdensome," but it is also "downright harassing." (Id. at 16.) First, Plaintiff argues that most of the requested documents do not exist. (Id. at 17, 21.) Second, Plaintiff asserts that even if the requested documents do exist, the information that they would provide is irrelevant to this case. (Id. at 17-21.) Plaintiff emphasizes that it is not seeking actual damages in the form of lost sales, and therefore there is no need to discover information on Plaintiff's financial status. (Id. at 17-20.) Plaintiff also stresses that it is mere speculation that the requested documents will shed any light on the strength of Plaintiff's trademarks. (Id. at 18.) Third, as to the time frame of the document request, Plaintiff maintains that there is no reason to seek documents dating back as far as 1991. (Id. at 16.) Lastly, Plaintiff contends that it has already provided Defendant with financial information, and to the extent Defendant believes that the information is insufficient, Defendant should have resolved the matter with Plaintiff rather than harass Gallina who is not a party to this action. (Id. at 22-23.)

Upon consideration of the parties' arguments, the Court finds that Plaintiff's audited financial statements are, at least in part, discoverable in this action. Defendant asserts laches as one of its affirmative defenses. In determining whether laches bars recovery in a trademark infringement action, the Ninth Circuit has identified six factors for a court to consider: "(1) [the] *strength and value of the trademark rights asserted*; (2) [the] plaintiff's diligence in enforcing [the] mark; (3) harm to senior user if relief is denied; (4) good faith ignorance by junior user; (5) competition between senior and junior users; and (6) extent of harm suffered by junior user because of senior user's delay." Tillamook Country

1  Smoker, Inc. v. Tillamook County Creamery Ass'n, 465 F.3d 1102, 1108 (9th Cir. 2006) (quoting E-
2  Systems, Inc. v. Monitek, Inc., 720 F.2d 604, 607 (9th Cir. 1983)) (emphasis added).  Thus, focusing on
3  the first factor, the Court finds Defendant's request for a portion of the audited financial statements,
4  though no their entirety, to be reasonably calculated to lead to the discovery of admissible evidence.  In
5  particular, any information contained in Plaintiff's audited financial statements regarding gross sales,
6  advertising/marketing, brand value and goodwill could shed light on the strength and value of Plaintiff's
7  trademarks, which as noted above, is a critical component of Defendant's laches defense.

8        Against this showing of need, Plaintiff has not demonstrated that the burden of producing these
9  documents outweighs Defendant's need.  Plaintiff argues that it has already provided Defendant with
10 information regarding its sales and advertising expenses, and therefore it is duplicative to seek these
11 documents from a non-party.  As a general matter, the Court agrees that there is a preference for parties
12 to obtain discovery from each other before burdening non-parties with discovery requests.[2]  See, e.g.,
13 Haworth, Inc., Herman Miller, Inc., 998 F.2d 975, 978 (D.C. Cir. 1993) (affirming order requiring the
14 parties to obtain discovery from each other before burdening non-parties).  However, here, Defendant
15 argues, and the Court agrees, that there is a particular need for Plaintiff's *audited* financial statements.
16 The information provided by Plaintiff regarding its sales and advertising expenses, among other things,
17 was created by Plaintiff itself for the purpose of this litigation.  Moreover, the information was never
18 independently audited.  Therefore, in addition to shedding light on the strength and value of Plaintiff's
19 trademarks, Plaintiff's audited financial statements are needed to verify the financial information that
20 Plaintiff has provided Defendant.

21       The Court also notes that in all likelihood, Plaintiff's audited financial statement are readily
22 accessible to Gallina.  It seems unlikely that Gallina, who after all is Plaintiff's accountant, would incur
23 much burden in producing these documents, and Plaintiff has not shown anything that would lead the
24 Court to believe otherwise.  Thus, because Plaintiff has not persuaded the Court that the production of
25 Plaintiff's audited financial statements is irrelevant, duplicative, or otherwise unduly burdensome, the
26 Court will not quash this particular request.
27 ///
28

---

[2] The deadline for non-expert discovery was set for April 29, 2011 and is now closed.  (Doc. 34.)

5

Nevertheless, the Court is mindful that the policy of favoring liberal discovery may need to be tempered where the target of discovery is a non-party. See Dart Industries Co. v. Westwood Chemical Co., 649 F.2d 646, 649 (9th Cir. 1980). To this end, the Court finds it appropriate to modify the time frame of the documents requested. Defendant's argument that Plaintiff's own pleadings allege that its trademarks became famous before 2002 (the year Defendant claims it first used the "PRIMA BELLA" trademark) is well-taken. However, Defendant fails to persuasively explain why it is necessary for the document request to date back as far as 1991. Thus, though the Court finds that data is needed for a period of time *before* Defendant began using the mark–in order to establish the strength and value of the mark by 2002–a five year proceeding this period is sufficient. Thus, Court require Gallina to produce documents that date from 1997 to the present.

Moreover, the Court will not require Gallina to produce communications between it and any of Plaintiff's lenders. Nor will Gallina be required to produce any working papers relating to branding, marketing, advertising, strategic planning, business loans, or litigation. Defendant's claimed need for these documents is tenuous at best. Defendant only loosely suggests that communications relating to Plaintiff's loan activities may reveal information regarding brand value. Yet, even assuming that such information would be found, Defendant fails to persuasively explain how the information would be any different than that which is already contained in Plaintiff's audited financial statements. In regard to working papers relating to brand value, marketing, advertising, strategic planning, business loans, and litigation, Defendant's request is simply overly broad. Defendant provides little guidance as to what "working papers" constitute.

The burden imposed on Gallina in producing these documents is also more readily apparent. Whereas Plaintiff's audited financial statements should be relatively accessible to Gallina and easily producible, communication logs and working papers regarding a whole host of issues are likely not readily available and would require Gallina to dredge through its files. Therefore, weighing this heavy burden against the minimal value this information would provide Defendant, the Court concludes that these document requests should be quashed, as they impose undue burdens on Gallina.

### 2. Privileged and/or Confidential Materials

Plaintiff argues that the first subpoena seeks documents that are privileged and/or confidential.

(Doc. 68 at 23-24.) In particular, Plaintiff expresses concern regarding documents that may be subject to attorney-client privilege or the work product doctrine. (Id. at 23.) Plaintiff also expresses concern over the release of confidential financial information.

In light of the Court's decision to quash Defendant's request for any working papers relating to litigation, Plaintiff's concern over privilege appears to have been adequately addressed. To the extent Plaintiff expresses anxiety regarding the release of confidential information contained in its audited financial statements, Plaintiff's concern appears to be well-founded. The Court will limit disclosure of Plaintiff's audited financial statement to the following issues: gross sales, advertising/marketing, brand value and goodwill. All other information, SHALL be redacted.

### 3. Reasonable Time to Respond

Plaintiff argues that the first subpoena afforded Gallina only six business days to respond to the document request, which is an unreasonable amount of time. (Doc. 68 at 24.) Plaintiff also notes that the request was made during the tax season, and therefore Gallina was likely busy at the time. (Id.) It appears, however, that Gallina contacted Defendant, at some point, and the two came to an agreement that Gallina would have until April 25, 2011 to respond.[3] (Id. at 14.) This gave Gallina at least fourteen days to either produce the requested documents or to object, which is exactly what Gallina did on April 15, 2011. In light of this, the Court declines to quash the first subpoena on this ground. The Court will, however, provide a new deadline by which Gallina shall comply with the first subpoena, as modified by this order.

### B.     The Second Subpoena

The Court will quash the second subpoena. Not only does the second subpoena fail to afford Gallina a reasonable time to respond, but it also is duplicative of the first subpoena. The Court struggles to understand the purpose of the second subpoena and reminds Defendant of its duty to avoid causing undue burdens on subpoenaed parties. See Fed. R. Civ. P. 45(c)(1).

### IV.     CONCLUSION

In accordance with the above, it is **HEREBY ORDERED** that Plaintiff's April 18, 2011 motion to quash, or in the alternative, for a protective order (Doc. 50) is **GRANTED IN PART** and **DENIED**

---

[3] Plaintiff, evidently, was not notified of this extension of time. (Doc. 68 at 12.)

7

**IN PART** as follows:

1. The first subpoena is modified.  Gallina is commanded to produce Plaintiff's audited financial statements from 1997 to the present.  In doing so, Gallina need only disclose information contained in the financial statements regarding gross sales, advertising/marketing, brand value and goodwill.  All other information contained in the audited financial statements **SHALL** be redacted.  Gallina **SHALL** produce these documents by June 3, 2011.

2. Defendant's request for Gallina's communications to Plaintiff's lenders and for working papers relating to or referring to branding, marketing, advertising, strategic planning, business loans and litigation is **QUASHED**.

3. The second subpoena, dated April 21, 2011, is **QUASHED**.

IT IS SO ORDERED.

Dated: __May 18, 2011__                              /s/ Jennifer L. Thurston
                                                    UNITED STATES MAGISTRATE JUDGE