IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERAWAN FARMING, INC., | Case No. 1:10-cv-00148 LJO JLT |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION FOR EVIDENTIARY SANCTIONS |
| vs. | (Doc. 77) |
| PRIMA BELLA PRODUCE, INC., | |
| Defendant. | |

Before the Court is Defendant's motion for evidentiary sanctions. In its motion, Defendant protests that Plaintiff obstructed its ability to obtain forthcoming deposition testimony from Dan and Mike Gerawan. As a consequence, Defendant seeks two evidentiary sanctions: (1) an adverse inference instruction; and (2) an order deeming certain requests for admission admitted. Plaintiff has opposed the motion, and the parties have appeared for hearing on this matter. After considering the documents submitted by the parties and their arguments made at hearing, for the reasons set forth below, the Court **DENIES** the motion.[1]

I.   **BACKGROUND**

This is an action for trademark infringement, trademark dilution, trademark cancellation, and unfair competition. Plaintiff seeks to recover damages and injunctive relief for infringement on its

---

[1] The Court declines to consider Defendant's reply papers that were filed less than one court day before the hearing. (Doc. 105) Local Rule 230(d) provides, "Not less than seven (7) days preceding the date of hearing, the moving party may serve and file a reply to any opposition filed by a responding party."

1

"PRIMA" trademarks (United States Trademark Registration Nos. 1,441,378 and 3,592,505), which are used in the distribution of fresh produce. (Doc. 13.) Defendant contests Plaintiff's allegations and brings a counterclaim to cancel United States Trademark Registration Nos. 1,441,378, 3,592,505, and 1,585,993. (Doc. 21.)

Defendant sought to depose two principals of Plaintiff. The deposition of Dan Gerawan, who is a principal and owner of Plaintiff, took place on May 4, 2011. (See Doc. 78, Ex. F.) The deposition of Michael Gerawan, who is also a principal and owner of Plaintiff, occurred one day later on May 5, 2011. (See id., Ex. C.)

On May 17, 2011, Defendant filed the instant motion for evidentiary sanctions. (Doc. 77.) In its motion, Defendant protests that Plaintiff's counsel impeded Defendant's ability to obtain "authentic, uncoached, real-time deposition responses from Gerawan's two key principals." (Id. at 3.) Defendant asserts that in particular, Plaintiff's counsel thwarted questioning regarding the likelihood of consumer confusion, trademark dilution, Defendant's affirmative defenses, and Plaintiff's pending malpractice action against its former patent attorneys. (Id. at 4-11.) Defendant contends that an appropriate sanction for such conduct is (1) imposing an adverse inference instruction; and (2) deeming certain requests for admission admitted. (Id. at 14-15.)

On June 13, 2011, Plaintiff filed an opposition to the pending motion. (Doc. 95.) Therein, Plaintiff counters that: (1) Defendant is trying to circumvent summary judgment standards by having facts deemed undisputed via sanction; (2) Defendant cannot argue, nor has it tried to argue, that it may obtain information protected by attorney-client privilege; (3) Defendant cannot move for evidentiary sanctions when it has not obtained an order compelling discovery; and (4) the sanctions requested by Defendant are extraordinary and inappropriate. (Id. at 16-29.)

On June 20, 2011, the parties appeared for hearing on this matter.

**II.  DEPOSITION TESTIMONY AT ISSUE**

Defendant highlights the following deposition testimony as evidence of Plaintiff's counsel's disruptive and obstructive conduct.[2]

---

[2] As abbreviations, the Court uses "PC" to denote Plaintiff's counsel, Ms. Pietrini; "DC" to denote Defendant's counsel, Mr. Swanson; "DG" to denote deponent Dan Gerawan; and "MG" to denote deponent Michael Gerawan.

1  **A.     Dan Gerawan's Deposition Testimony**

2  Q:    If a person were advertising and selling prima apples without authorization from Gerawan entities, would you consider that conduct to be an infringement of your company's prima trademark rights as they relate to fruit?

4  PC:   Objection. Calls for a legal conclusion. And calls for attorney/client privilege. Instruct him [Dan Gerawan] not to answer.

* * *

6  Q:    If a person were advertising and selling a prima apple without authorization from your companies [sic], would you consider that conduct in your view to be diluding [sic] any of your companies [sic] prima trademarks as they relate to fruit?

9  PC:   Objection. Calls for legal conclusion and instruct the witness not to answer based on attorney/client privilege and work product.

10 DC:   Again, I was asking for his view.

11 Q:    I'm not looking for what you learned from any attorney. Can you answer with that qualification?

13 DG:   No.

14 Q:    If a person were advertising and selling prima black plums without authorization from your company, would you consider that growing and sales conduct to be an infringement of Gerawan Farming prima trademarks right in fruit?

16 PC:   Objection. Calls for legal conclusion and instruct the witness not to answer based on attorney/client privilege and work product.

17 DC:   Do you have any opinion about that subject matter . . . as an officer or director of the Gerawan entities apart from anything you've learned from counsel?

19 DG:   No.

20 Q:    If a person were advertising and selling prima red plums without authorization from your company, would you consider that conduct to be an infringement of Gerawan Farming prima trademarks right's [sic] as they relate to fruit?

22 PC:   Objection. Calls for legal conclusion. Lack foundation. Instruct the witness not to answer based on attorney/client privilege and work product.

23 DC:   And you have no opinion on that as an officer or director of the company?

24 DG:   Attorney/client communication.

25 Q:    If a person were advertising and selling prima black or red plums without authorization from your company, would you consider that conduct to be an infringement and dilution of your companies [sic] prima trademarks as they relate to fruit?

28 PC:   Objection. Compound, lacks foundation. Calls for legal conclusion and invades the attorney/client privilege and work product doctrine. Instruct the witness not

3

1     to answer.

2 (Dan Gerawan's Dep. 54:1-7, 54:23-56-12.)

### B. Michael Gerawan's Deposition Testimony

Q: So these two documents 330 and 331 are what are called rule 26 initial disclosure and each of these were filed by the defendants and your name is listed as a potential fact witness in each. Have you ever reviewed these two initial disclosures before?

MG: If I did, it would have been with Mike Mallory.

Q: Okay. Do you understand that when a legal malpractice claim is filed against counsel that the attorney/client privilege has been waived?

PC: Objection. That misstates the law it's a legal conclusion and I'm going to instruct the witness not to answer. Any information he would have would be based on discussions with Mr. Mallory or any other attorney with the company.

DC: I'm not asking for any legal discussions you've had with Mr. Mallory or your counsel here, this really goes to any discussions you had with patent counsel during the time period when you were working with patent counsel with respect to patent application process. Do you understand that that privilege has been waived.

PC: I don't agree with your representation and we're not going to allow him to answer questions of communications he had with patent counsel of Gerawan. It's all privileged. We don't agree with your assessment and statement you've made on the record at all.

DC: So if I understand you correctly, Jill, if I ask questions about Mike Gerawan's communications with the former intellectual property counsel with respect to the five different patent applications that led to patents, you are going to instruct this witness –

PC: Absolutely.

DC: – not to answer?

PC: I'm going to [instruct] him not to answer consistent with our interrogatory answers and consistent with the law.

DC: Well, I respectfully disagree. We may end up having to take some of this deposition after we get further instruction from our judges.

(Whereupon, Mr. Spellman exited the room.)

DC: But if I understand you're not letting him answer questions about Exhibit 330 and 331.

PC: No, I'm not. One, he's never seen them; and, two, if he did have any information about them it would be related to – in the context of discussion with Mr. Mallory or other counsel of Gerawan. It's all privilege.

DC: I'm not asking about his – again, so I'm clear, I'm not asking about his

4

|   |     |     |
|---|-----|-----|
| 1 |     | discussions with you or Mr. Mallory that went into the filing fo the complaints. I'm interested in getting the facts of his discussions with former intellectual private counsel. |
| 3 | PC: | Well then – it's the same result. You just said I'm not going to allow him to answer questions on 330 or 331, those relate to Townsend and Morel lawsuit; initial disclosures have nothing to do with this case. So, no, he's not going to answer those questions. You get foundational and privilege issues. And then with respect to the questions that you intend to ask him, communications that Mr. Gerawan had with intellectual property counsel about the patents you've identified in this case, that's all privileged, we don't agree with you. |
| 7 | DC: | I think we're going to have to take that up with Judge Thurston. |
| 8 |     | * * * |
| 9 | Q:  | I'll focus on the [parts] you have seen. Before we get into the file history, I just have some general questions. Do you know how the title of U.S. plant patent 8,057 came to be listed as prima red plum 9-1? |
| 11 | PC: | Objection. Calls for legal conclusion. |
| 12 | MG: | Yeah, that's what the – am I supposed to talk about stuff I talked to the patent attorney about? |
| 13 | PC: | No. I instruct you not to answer. Your communications are based on discussions with your patent attorney then I discuss you not to answer. |
| 15 | MG: | Contents was discussed with the patent attorney. |
| 16 | PC: | Okay. Then he can't answer the question. |
| 17 | DC: | I think that's quite an overbroad application of the attorney/client privilege. That is way beyond the scope of the attorney/client privilege, especially as it relates to applications for patents. I'm going to reserve the ability to ask more questions but I'll try to go ahead and ask ones that I – that maybe you won't object to. |
| 19 |     | * * * |
| 20 | DC: | Was your work in seeking a patent application intended to be on behalf of Gerawan forming or some other Gerawan entity? |
| 22 | MG: | Yes. Individually and – yeah, Gerawan Farming. I'm not 100 percent I understand the question. But. |
| 23 | Q:  | That was the intent at the time? |
| 24 | MG: | The fruit was to be grown and sold by Gerawan Farming. |
| 25 | Q:  | Do you know why small entity status was claimed? |
| 26 | MG: | No. |
| 27 | Q:  | Did you have discussions with Mr. Whirl about small entity status. |
| 28 | PC: | Objection. Attorney/client privilege. Instruct the witness not to answer. |

5

1              * * *

2   Q:   If a person is advertising and selling prima black plums without authorization from your company, do you consider that to be an infringement of your
3      company's trademark rights in the prima trademarks?

4   PC:   Objection. Calls for legal conclusion. Lacks foundation. Necessarily would involve discussions with counsel or work product and I will instruct him not to
5      answer.

6   DC:   If a person is advertising and selling prima red plus without authorization from your company, do you consider that conduct to be an infringement of your
7      companies trademark rights in its prima trademarks?

8   PC:   Same objections. Same instruction.

9   DC:   If a person is advertising and selling prima apples without authorization from your company do you consider that to be a infringement of its prima?
10

11   PC:   Same objection and adding improper hypothetical to all the of these questions and instruct him not to answer.

12   DC:   If a person were growing and selling prima black plums without authorization from your company, would you consider that to be a – an infringement of your
13      company's patent rights with respect to prima black plums?

14   PC:   Same instructions. Plus adding improper hypothetical. Same objections.

15   DC:   If a person were growing and selling prima red plums without authorization from your company, would you consider that to be a violation of your
16      companies patent rights with respect to prima plums?

17   PC:   Same objections. Same instruction.

18 (Michael Gerawan Dep. 99:4-101:15, 109:2-15, 140:4-141:7.)

19 **III.**   **REQUESTS FOR ADMISSION AT ISSUE**

20   **REQUEST FOR ADMISSION NO. 12:** Admit that an attorney employing the degree of care and skill ordinarily possessed by reputable trademark and patent
21 attorneys would not have included the name PRIMA as part of a cultivar name in a plant patent.
22
  **RESPONSE TO REQUEST FOR ADMISSION NO. 12:** Plaintiff objects to the
23 RFA on the grounds that it is vague, ambiguous, argumentative, and compound. Plaintiff also objects to this RFA on the grounds that it seeks a legal conclusion and
24 seeks information that is irrelevant to the claims ana defenses in t is case.

25   **REQUEST FOR ADMISSION NO. 13:** Admit that, by their inclusion of the word PRIMA as part of a patent cultivar name, the conduct of your former patent and
26 trademark counsel fell below the level of reasonable care, skill and diligence possessed and exercised by patent and trademark attorneys in similar circumstances in
27 similar localities.

28   **RESPONSE TO REQUEST FOR ADMISSION NO. 13:** Plaintiff objects to the RFA on the grounds that it is vague, ambiguous, argumentative, compound. Plaintiff

    also objects to this RF A on the grounds that it seeks a legal conclusion, and seeks information not relevant to the claims or defenses in this case.

**REQUEST FOR ADMISSION NO. 14:** Admit that the inclusion "Prima" as part of the cultivar name in your plant patents creates a significant risk that your- PRIMA fruit-related trademarks are invalid.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:** Plaintiff objects to the RFA on the grounds that it is vague, ambiguous, argumentative and compound. Plaintiff also objects to this RF A on the grounds that it seeks a legal conclusion.

**REQUEST FOR ADMISSION NO. 15:** Admit that you have been damaged in excess of the jurisdictional limits for an action filed in Superior Court of the State of California as a proximate result of your former patent and trademark counsel's inclusion of the word PRIMA in plant patent names.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:** Plaintiff objects to the RFA on the grounds that it is vague, ambiguous, argumentative, and compound. Plaintiff also objects to this RF A on the grounds that it seeks a legal conclusion.

(Doc. 77 at 7-8) Notably, Defendant does not challenge the objections made in these responses but seeks as a remedy in this motion, to have the Court deem these requests to be admitted.[3] (Doc. 77 at 14)

**IV. DISCUSSION**

Participation by deponent's counsel in a deposition is generally limited by Rule 30(c)(2). "An objection must be stated concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). In addition, counsel may "instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Id. The making of an excessive number of unfounded objections or claims to privilege is sanctionable conduct. Fed. R. Civ. P. 30 advisory committee's notes. Pursuant to Rule 30(d)(2), "[t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

As an initial matter, the Court emphasizes that this matter is *not* before it on a motion to

---

[3] A motion to have RFAs deemed admitted is to be brought under Fed. R. Civ. 36(6). A deemed admission is ordered after a court finding that an objection is not justified and that the subsequent answer offered does not comply with the rule. But, even in this situation, the Court may order an amended response to be provided. Here, Defendant takes the novel approach of circumventing these procedures by confining its motion to Fed. R. Civ. P. 30. Because it is unnecessary to the Court's determination here, the Court does not condone this methodology.

compel further discovery. The pending motion is one solely for evidentiary sanctions. Therefore, the relevant question is not whether a particular objection or claim to privilege is unfounded. Instead, the pertinent inquiry is the one posed by Rule 30(d)(2): Has Plaintiff's counsel made excessive, baseless objections during the depositions such that her conduct has impeded, delayed, or frustrated the fair examination of the deponents?

The answer is no. The clear source of friction here is Plaintiff's counsel's repeated assertion of the attorney-client privilege and instruction to the deponents not to respond. However, the instructions were entirely appropriate. For example, Defendant's counsel asked Dan Gerawan a series of questions as to whether the deponent considered certain activity as infringement on Plaintiff's trademarks. (See Dan Gerawan's Dep. 54:1-7, 54:23-56-12.) Plaintiff's counsel objected and instructed the deponent not to respond due to attorney-client privilege. This objection was reasonable given the vagueness of the question and the potential nexus to communications between the deponent and his counsel. Realizing this, Defendant's counsel properly clarified his line of questioning, asking the deponent whether he had any opinion on the matter apart from any discussions he may have had with his counsel. The deponent responded no. The Court sees no wrong or gamesmanship in any of this.

As to the deposition of Michael Gerawan, the key issue was the scope of protection afforded by the attorney-client privilege regarding communications between the deponent and Plaintiff's former patent attorneys. Defendant contends that Plaintiff waived its privilege for all purposes once it filed a legal malpractice suit against its former patent attorneys. (Doc. 77 at 11-12.) Plaintiff, on the other hand, argues that by filing a malpractice suit, its privilege was waived only with respect to its former attorneys. (Doc. 95 at 18.) In other words, Plaintiff maintains that the attorneys sued for malpractice may use any privileged materials to the extent that such is necessary for *their* defense in *that* case. (Id.) Plaintiff firmly asserts that it has not waived its privilege "for any other purpose or as to anyone else." (Id. at 18-19.)

In the Ninth Circuit, implied waiver of attorney-client privilege occurs where: "(1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it

relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." Home Indem. Co. v. Lane Powell Moss & Miller, 43 F.3d 1322, 1326 (9th Cir. 1995). Here, the parties do not appear to dispute that Plaintiff has not waived its privilege by "putting the protected information at issue" in this case. Id. Plaintiff does not rely on any of its communications with its former patent attorneys to assert claims or defenses in this case. See Rhone-Poulenc v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994) ("Advice is not in issue merely because it is relevant . . . The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.").

There is also no dispute that Plaintiff waived its attorney-client privilege with respect to its former attorneys in Plaintiff's pending legal malpractice suit. "Generally, the filing of a legal malpractice action against one's attorney results in a waiver of the privilege, thus enabling the attorney to disclose, to the extent necessary to defend against the action, information otherwise protected by the attorney-client privilege." McDermott, Will & Emery v. Superior Court, 83 Cal. App. 4th 378, 383-84 (2000). See also Rhone-Poulenc Rorer, 32 F.3d at 863 ("[A] client may waive the privilege as to certain communications with a lawyer by filing a malpractice action against the lawyer."). Therefore, it is clear that Plaintiff's former patent attorneys may utilize otherwise privileged communications to defend themselves in Plaintiff's legal malpractice suit.

Where the parties clash, then, is over the issue of whether Plaintiff's waiver of privilege in one action extends to the current action. This issue was addressed by the Fifth Circuit in United States v. Ballard, 779 F.2d 287 (5th Cir. 1986). In Ballard, the defendant was found guilty in a criminal trial for making false statements in his petition for bankruptcy. Id. at 290. At trial, the district court admitted the testimony of the defendant's former attorney. Id. at 291-92. The district court reasoned that the defendant, by suing his former attorney for malpractice in a separate civil action, waived any privilege shielding his communications with his former attorney. Id. at 292. The Fifth Circuit disagreed. The Fifth Circuit explained: "The mere institution of suit against a lawyer . . . is not a waiver of the [attorney-client] privilege for all subsequent proceedings, however related or

unrelated." Id.[4]

Applying the reasoning set forth in Ballard, the Court finds that Plaintiff may invoke the attorney-client privilege to shield communications between it and its former counsel in this action. The initiation of a malpractice suit against Plaintiff's former patent attorneys does not mean that Plaintiff's communications with its former attorneys are suddenly open to unfettered discovery in this case. See Industrial Clearinghouse, Inc. v. Browning Mfg., 953 F.2d 1004, 1007 (5th Cir. 1992) ("Ballard teaches, quite correctly, that the *mere institution of suit* against an attorney is insufficient to waive the attorney-client privilege as to third parties in a separate action that [may concern] the same subject matter as the attorney malpractice action.") (emphasis in original).

Defendant relies upon Rutgard v. Haynes, 185 F.R.D. 596 (S.D. Cal. 1999), as support for its position that by filing the malpractice action, Plaintiff has waived the attorney-client privilege related to the instant litigation. In Rutgard, at 597-598 (S.D. Cal. 1999), Haynes was a lawyer who represented the plaintiff in a civil antitrust case. After the case was lost, both Rutgard and Haynes were sued for malicious prosecution. Id. In that action, Rutgard was represented by attorney Royce. Id. After the malicious prosecution suit was settled, Rutgard sued Haynes for fees and costs incurred in the malicious prosecution as well as the amount paid in settlement, based upon a claim of legal malpractice. Id.

The question presented to the Court was whether Rutgard's lawsuit against Haynes waived the attorney-client privilege as to Royce. Rutgard, 185 F.R.D. at 598. The court observed that, in general, the filing of the professional negligence action against Haynes would not waive the attorney-client privilege as to Royce given that Haynes and Royce provided successive representation of Rutgard rather than acting as co-counsel. Id. at 598-599. However, because Rutgard sought recovery of the amount paid to settle the malicious prosecution claim, Rutgard had placed at issue the reasonableness of the settlement and issues of causation and contributory negligence attributable to Royce. Id. at 599-600. Finally, the court was persuaded by the fact that Rutgard identified Royce as a witness. Id. at 601. The court noted, "[A] party may not insist on the protection of the

---

[4] The Fifth Circuit went on to find the testimony was, in fact, admissible, but on other grounds. See Ballard, 779 F.2d at 292-93.

attorney-client privilege for damaging communications while disclosing other selected communications because they are self-serving. Voluntary disclosure of part of a privileged communication is a waiver as to the remainder of the privileged communications about the same subject." Id.

Here, there is no evidence that Plaintiffs have taken any of the actions suggested by the court in Rutgard that would waive the attorney-client privilege with their patent counsel in this litigation. There is no evidence that Plaintiff has placed the conduct of the patent attorneys at issue. Gerawan has not sought to use them as witnesses to this case and unequivocally denies that it will assert that its actions in obtaining the plant patents, were based upon a good faith reliance upon attorney advice.[5]

Returning to the deposition testimony of Michael Gerawan, the Court finds that the invocation of the attorney-client privilege was appropriate. For example, when asked by Defendant's counsel whether he knew how the title of U.S. plant patent 8,057 came to be listed as Prima Red Plum 9-1, Michael Gerawan stated that his knowledge of such was based on communications with Plaintiff's former patent attorneys. (Michael Gerawan Dep. 103:25-104:6.) Thus, Plaintiff's counsel instructed the deponent not to respond. (Id. at 104:7.) The Court sees no error in this.

## IV.   CONCLUSION

In sum, the Court does not find that Plaintiff's counsel impeded, delayed or frustrated the fair examination of Dan or Michael Gerawan. Counsel's assertions of attorney-client privilege were not excessive or without merit. Accordingly, it is **HEREBY ORDERED** that Defendant's May 17, 2011 motion for evidentiary sanctions (Doc. 77) is **DENIED**.

IT IS SO ORDERED.

Dated:   **June 23, 2011**                                                      /s/ Jennifer L. Thurston
                                                                               UNITED STATES MAGISTRATE JUDGE

---

[5] On the other hand, Plaintiffs argue that the objection that the question calls for a legal conclusion were not well-founded. They rely upon Advanced Cardiovascular Systems, Inc. v. C.R. Bard, 144 F.R.D. 372, 378-379 (N.D. Cal. 1992), for the proposition that the patent inventor may be asked questions about what he thought the key terms of their patent terms meant. While a correct statement of law, Plaintiffs point out that this case alleges a violation of the Prima Brand *trademark* not an infringement of any plant patent. Lenz v. Universal Music Corp, 2010 U.S. Dist. LEXIS 47873 at *6 (N.D. Cal. Apr. 20, 2010) In any event, because the objections based upon the attorney client privilege are proper, as determined above, the Court need not address here whether the objections based upon legal conclusion are well-taken.